**UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF MASSACHUSETTS**

SYED K. RAFI, Ph.D.
*Plaintiff*
    *v.*
HARVARD UNIVERSITY MEDICAL SCHOOL:          Civil Action No:  **20-CV-10038-NMG**
    BRIGHAM AND WOMEN'S HOSPITAL:
        CYNTHIA C. MORTON, Ph.D.
        RICHARD L. MAAS, MD., Ph.D.
    MASSACHUSETTS GENERAL HOSPITAL:
        MARCY E. MACDONALD, Ph.D.
    CHILDREN'S HOSPITAL BOSTON:
        MIRA B. IRONS, MD.
*Defendants*

**PRO SE PLAINTIFF'S "SUPPLEMENT" TO HIS MOTION**
**SEEKING "STAY" IN THIS ACTION [ECF 25]**

As indicated in plaintiff's motion seeking "stay" in this action *[ECF 25; filed 02/11/2020]*, **the sole purpose of having transferred this case from the Massachusetts State Superior Court to this Court** by the Attorney representing Children's Hospital Boston, Ms. Amy Serino, **is meant to get this case dismissed citing *Res Judicata* Doctrine given plaintiff, Dr. Rafi's prior case at this Court during 2014.**

I.      WHEN NEW FACTS IN A SECOND LAWSUIT OVERCOME THE DEFENSE OF
              *RES JUDICATA* (CLAIM PRECLUSION)

As the Supreme Court explained more than 50 years ago in *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955), **"*res judicata* does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of the earlier conditions."**

Many of the alleged "*continuing later and latest (until 2020) violations*" [*E-Discovery Exhibits 19 through 25*] in plaintiff, Dr. Rafi's current complaint were not even ripe for judicial review during 2014, and therefore, unripe claims cannot later serve as a basis for *res judicata*. *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529–30 (6th Cir. 2006).  Accordingly, defendants

cannot claim *res judicata*, since there are also still continuing violations <u>since 2014 to this day,</u> as well as "currently permanently worsened *domino effects* of the race and class based conspiratorial collusion and coercive employment reprisals that were initiated during 2004 and recklessly and ceaselessly perpetuated collectively by all defendants ever since, despite plaintiff's 2014 litigation. Therefore, the alleged 2014 through 2020 <u>continuing violations</u> in this litigation and the currently permanently worsened *domino effects* of the previously alleged violations since 2004 through 2014 are indeed actionable now under 42 U.S.C. §1985 vis-à-vis §1986, in accordance with the Supreme Court ruling in *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955), as continuing reckless and ceaseless violations, under the Continuing Violations Doctrine: <u>See,</u>

*"The Continuing Violations Doctrine",* Kyle Graham, 43 Gonz. L. Rev. 271 (2008): *http://digitalcommons.law.scu.edu/cgi/viewcontent.cgi?article=1024&context=facpubs*

Race and class- based conspiratorial collusion and the initiation of coercion by Harvard University's tenured professors, Medical School and its affiliated academic, clinical and research hospitals, which, as "still continuing detrimental *domino effect*", has <u>now</u> permanently deprived plaintiff's in-demand and high-paying professional career, rendering him as a "*pauper"*, which has been attested to by plaintiff.  This still continuing race and class- based conspiratorial collusion, coercion, professional and scientific employment reprisals at Harvard Medical School's teaching and research hospital (BWH) by Harvard's tenured professors are also evidenced in 25 extensive *E-discovery exhibits* that are referenced in this complaint.

Conspiracies by powerful groups of individuals (*such as defendants in this case*), or by powerful corporations (*such as, Harvard University, Brigham and Women's Hospital, Children's Hospital Boston and Massachusetts General Hospital in this litigation*), may potentially invade a citizen's Constitutional Rights in a far more serious way than direct action by Government to infringe those rights [See, *First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978)].  Moreover, a

defendant cannot deny the existence of a conspiracy because his or her co-conspirators have any immunity from suit (See, *Macko v. Byron,* 641 F.2d 447, 449-50 (5th Cir. 1981; *White v. Bloom*, 621 F.2d 276, 281 (8th Cir.). cert. denied, 449 U.S. 995 (1980).

## II.    THE DEFENDANTS FAIL TO ESTABLISH *RES JUDICATA*

"*Res judicata*" is a phrase covering two forms of preclusion. *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 n.1 (6th Cir.1987). Typically, it means claim preclusion: A final judgment on the merits precludes parties from relitigating a claim that was or could have been raised in that action. *Id*. The phrase is also used to describe issue preclusion (also known as collateral estoppel), which bars re-litigation of a particular issue that has already been decided in an action between the parties. *Id*.

Defendants contend that plaintiff, Dr. Rafi's current suit is barred through *res judicata* by earlier case against the defendants at this Court.  But, as summarized above, many of the alleged "continuing later (since 2014) and latest (until 2020) violations" in plaintiff's current case <u>were not even ripe for judicial review, and therefore, unripe claims cannot later serve as a basis for res judicata</u>. *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529–30 (6th Cir. 2006).

Plaintiff alleges in this complaint that due to Dr. Morton's 2004 "*initiation and perpetuation*" (as an outgoing and willing co-conspirator!) of ceaseless and reckless coercive employment reprisals against each and every one of Dr. Rafi's several dozen  professional and related job opportunities at her clinical cytogenetics laboratory at BWH against plaintiff's various professional candidacies *(which is still continuing, as alleged and evidenced in the latest Exhibits: 19 through 25)* until 2020- as unceasing coercive and/or vindictive employment reprisals-"**<u>as detrimental domino effect</u>**", has in-turn currently resulted in the permanent loss of Dr. Rafi's high-paying and in-demand professional career, and consequently, it has irreversibly damaged his personal life and psyche due to deprivation of income, rendering him in a

**financially dire situation today. All these allegations are now appropriately actioned for the very first time under 42 U.S.C. § 1985(3) vis-à-vis under § 1986, against all defendants under the Continuing Violations Doctrine.**

Defendant, Dr. Mira Irons (*Caucasian- White- majority race and privileged class of Ashkenazi Jew (same as Dr. Barbara Pober)*) being a highly influential medical genetics professor at Children's Hospital Boston, Harvard Medical School (CHB/HMS), and being the supervisor, colleague and well-wisher of Dr. Barbara Pober at CHB/HMS, abrasively and negatively influenced Dr. Morton to prevent Dr. Morton from considering plaintiff's several dozen professional as well as research job applications over the years at Dr. Morton's ever expanding clinical cytogenetics laboratory at BWH/HMS in order to facilitate the return of Dr. Pober along with Dr. Rafi, per the alleged race and class based conspired plan by YSM in collusion with HMS.

Thus, Dr. Irons in her official capacity as well as in her personal capacity proactively perpetuating the alleged conspiratorial collusion and coercion- at Harvard Medical School as a whole on behalf of her colleague Dr. Pober at CHB/HMS.

In addition, a non-professional managerial position that Plaintiff had managed to get (*in order to survive*) at the CHB/HMS was also subjected to termination falsely indicating that the service was being terminated, although the service continued to operate after Plaintiff's departure. Plaintiff has emails [*E-Discovery documentations*] evidencing the abrasive role of Dr. Irons in plaintiff's dismissal from the managerial position at CHB which will be presented to the jury.  Dr. Irons indicated to plaintiff's managerial position- employer at CHB that plaintiff should instead seek a research position at YSM (*to enable her friend and colleague Dr. Pober to be hired back by YSM*).  **This race and class based conspiratorial coercive employment termination of Dr.**

Rafi's managerial position at CHB/HMS, which *as domino effect-* **to this day has resulted in**
**Dr. Rafi's continued loss of income and proper employment.**

Moreover, plaintiff's current complaint also alleges that the expansions of the alleged
violations nation-wide **to this day have caused permanently worsened conditions**—*a*
***substantial change in the scope of continuing harm***.  Therefore, under *Lawlor* and related
caselaw, *res judicata* does not apply to plaintiff's current alleged still continuing coercive and/or
vindictive reprisal claims.

For these reasons and for the still continuing nature of the current allegations, *res judicata*
cannot apply.  See, *Lawlor*, 349 U.S. at 328 (***holding that res judicata "cannot be given the effect***
***of extinguishing claims which did not even then exist and which could not possibly have been***
***sued upon in the previous case"***).

These claims about the current and still on-going injuries, even if they were "expected"
during the prior litigation were simply not ripe until now. Accordingly, *res judicata* cannot apply.
*Rawe,* 462 F.3d at 521 (*res judicata cannot bar claims that were unripe in earlier suit*).

###### III.     THE CURRENT COMPLAINT RAISES NEW FACTS *THAT DO NOT ARISE OUT OF THE SAME "TRANSACTION OR OCCURRENCE."*

In the opening brief that was filed on behalf of a plaintiff -appellants in the US  Court of
Appeals for the Sixth Circuit, in the case of *State of Ohio ex rel. Susan Boggs, et al. v. City of*
*Cleveland*, successfully appealing the judgment of US District Court for the Northern District of
Ohio *(Case: 09-4403; Document: 00618710729; Filed: 01/26/2010;* see *Attachment below)*,
effectively and successfully argued as to how a second lawsuit can proceed with similar claims as
presented in an earlier dismissed suit, indicating that "new facts in a second lawsuit overcome the
defense of *res judicata* (claim preclusion)".

Several of the arguments that have been made in the referred case, *State of Ohio ex rel. Susan Boggs, et al. v. City of Cleveland*- brief serves as fitting arguments in plaintiff, Dr. Rafi's opposition to all defendants' motions to dismiss this complaint claiming *res judicata*.

In *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955), the Supreme Court unanimously reversed the application of *res judicata*. There, the plaintiffs brought an antitrust suit that was ultimately dismissed with prejudice. *Id. at 324*. Seven years later, the plaintiffs brought a second antitrust suit against many of the same defendants, alleging the same course of wrongful conduct, which had worsened in the interim. *Id. at 328*. The lower courts applied *res judicata* to bar the second suit. *Id.*

But the Supreme Court reversed, explaining that even though "both suits involved essentially the same course of wrongful conduct," *res judicata* did not apply. *Id. at 327* (internal quotation marks omitted). The Court noted that "such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." *Id. at 327–28.*

The Court held that claims in the second suit based on events that had not yet occurred at the time of the first suit were not barred: *"While the [earlier] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."* *Id.*

The Court further held that the plaintiffs' claims in the second suit survived *res judicata* to the extent that those claims alleged worsening of the earlier wrongful conduct: "In the interim, moreover, there was a substantial change in the scope of the defendants' alleged monopoly . . . with the result that the defendants' control over the market . . . had increased to nearly 100%." *Id.* "Under these circumstances," the Court explained, "whether the defendants' conduct be regarded

as a series of individual torts or as one continuing tort, **the [earlier] judgment does not constitute a bar to the instant suit.**" *Id.*

*Lawlor* **retains its vitality to this day:** See, e.g., *Darney v. Dragon Prods. Co., LLC,* 592 F. Supp. 2d 180 (D. Me. 2009) (applying *Lawlor* to deny application of *res judicata* where second complaint included new factual allegations, even though there was "facial similarity" with the first complaint; **as is the case in plaintiff, Dr. Rafi's current complaint.** Also see, *Duncan v. Peck,* 752 F.2d 1135, 1139 (6th Cir. 1985) (applying Ohio res judicata principles and explaining that *"a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter"*); additionally see, e.g., *Portage Cty. Bd. of Commrs. v. Akron,* 808 N.E.2d 444 (Ohio Ct. App. 2004) (holding that *res judicata* did not apply to suit based on defendant's use of river water because defendant's use had changed to such a degree that it could no longer be considered the same transaction or occurrence).

## CONCLUSION

Wherefore, since no legal principle can prevent plaintiff, Dr. Rafi from the opportunity to further substantiate his well-pleaded allegations, the court should <u>deny</u> all defendants' illogical arguments of *res judicata* in their rule 12(b)(6) motions for dismissal, pretentiously alleging therein that plaintiff has failed to state a claim upon which relief can be granted.

Moreover, when considering such a routine motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 218 (5th Cir. 2012).

However, since plaintiff, Dr. Rafi's Connecticut District Court case is still being considered by that Court, he is respectfully seeking "STAY" in this lawsuit at this Court during the pendency of his lawsuit at the Connecticut Court, in the furtherance of judicial economy.

Respectfully submitted,

*R. Syed Rafi*

-------------------                                          Date: February 13, 2020
Syed K. Rafi, PhD.
*Pro se* Plaintiff
3237 Apex Cir, Falls Church, VA 22044
rafigene@yahoo.com
Phone: 816 787 4366

ATTACHMENT BELOW:   *State of Ohio ex rel. Susan Boggs, et al. v. City of Cleveland,* successfully appealing the judgment of US District Court for the Northern District of Ohio:  *Case: 09-4403; Document: 00618710729; Filed: 01/26/2010.*

---------------------------------------------------------------------------------------------------------------------------------

CERTIFICATE OF SERVICE

This reply to all defendants has been filed through this Court's CM/ECF system of which all defendants' attorneys are participants.

Respectfully,

*R. Syed Rafi*

                                                            Date: February 13, 2020

Syed K. Rafi

No. 09-4403

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STATE OF OHIO EX REL. SUSAN BOGGS, ET AL.,

*Plaintiffs-Appellants*,

v.

CITY OF CLEVELAND,

*Defendant-Appellee.*

APPEAL OF JUDGMENT OF UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

### PLAINTIFFS-APPELLANTS' BRIEF

David E. Mills (OH 0075400)
THE MILLS LAW OFFICE LLC
1300 West Ninth Street, Suite 636
Cleveland, OH 44113
Telephone:   (216) 929-4747
Facsimile:   (202) 379-1767
E-mail: dm@MillsFederalAppeals.com

*Counsel for Plaintiffs-Appellants*

*[Opening Brief--State of Ohio ex rel. Susan Boggs, et al. v. City of Cleveland]*

## SUMMARY OF ARGUMENT

As the Supreme Court explained more than 50 years ago in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), res judicata does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of the earlier conditions. That is precisely the case here, with (1) expanded runways, including one 2000 feet closer to Plaintiffs' home; (2) new water pollution from the expansion; and (3) the revelation that the City has denoted Plaintiffs' property for acquisition because it is in runway areas where residential use is forbidden.

Any argument that res judicata bars new claims about the expanded runways simply because the expansion was "planned" back in 2002 ignores that any purported claims in 2002 about the nonexistent runways were not even ripe for judicial review. As this Court has held, unripe claims cannot later serve as a basis for res judicata. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529–30 (6th Cir. 2006).

The City falls far short of its burden to establish res judicata here. These are new claims, and this case was improperly cut short. Plaintiffs, like any other plaintiffs, should be allowed to substantiate their well-pleaded claims in the district court.

## ARGUMENT

### The City Failed to Meet its Burden to Establish That Res Judicata Bars the Suit

"Res judicata" is a phrase covering two forms of preclusion. *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 n.1 (6th Cir. 1987). Typically, and as used in this case, it means claim preclusion: A final judgment on the merits precludes parties from relitigating a claim that was or could have been raised in that action. *Id.* The phrase is also used to describe issue preclusion (also known as collateral estoppel), which bars relitigation of a particular issue that has already been decided in an action between the parties. *Id.* Consistent with the parties' briefing and the district court's opinion below, this brief uses the phrase "res judicata" to mean claim preclusion.

The City contends that Plaintiffs' current suit is barred, through res judicata, by the state-court judgment that dismissed their 2002 Complaint. This Court "must give the same preclusive effect . . . to state court judgments that those judgments would receive in courts of the rendering state." *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999). "[I]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, [the litigant] is similarly precluded from litigating the suit in federal court." *Gutierrez*, 826 F.2d at 1537 (footnote omitted).

Res judicata in Ohio consists of four elements: (1) a second action involving the same parties (or their privies) as the first; (2) a prior final, valid decision on the merits by a court of competent jurisdiction; (3) a second action arising out of the transaction or occurrence that was the subject matter of the first action; and (4) a second action raising claims that were or could have been litigated in the first action. *Portage Cty. Bd. of Comm'rs v. City of Akron*, 846 N.E.2d 478, 495 (Ohio 2006) (quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

The City bears the burden to establish all four requirements. As discussed below, it fails on the second requirement as to Boggs and Rachid, and it fails on the third and fourth requirements as to all three Plaintiffs, including Fouad, Inc.

### 1. This Case Involves the Same Parties As in the 2002 Suit.

Plaintiffs concede that the City has established this first requirement.

### 2. The First Dismissal Was On the Merits Only As to Fouad, Inc., Not As To Boggs and Rachid.

When Ohio courts dismiss a party for lack of standing, that dismissal is not a final decision on the merits for purposes of res judicata. *Asher v. City of Cincinnati*, No. C-990345, 1999 Ohio App. LEXIS 6223, at *2 (Ohio Ct. App. Dec. 23, 1999). The lack of an appeal does not suddenly make the dismissal "on the merits" and therefore subject the new suit to the barrier of res judicata.

By contrast, res judicata may bar a second suit if the suit raises the same claims that were dismissed on the merits in a first suit and not appealed. That remains true if the

reason for dismissing the first suit on the merits happened to be res judicata itself (based on a dismissal on the merits in even earlier suit). That is what occurred in *Mason v. GFS Leasing and Mgmt.*, No. 79536, 2002 Ohio App. LEXIS 455 (Ohio Ct. App. Feb. 7, 2002), which the district court mistakenly applied to bar the new suit here.

In *Mason*, the plaintiff was fired from her job. *Id.* at *1. She first brought an administrative appeal (regarding the denial of unemployment benefits) to an Ohio trial court. *Id.* at *1–2. She then filed a separate lawsuit in an Ohio trial court alleging other wrongs related to her firing (Case #1.) *Id.* Meanwhile, the court dismissed the original administrative appeal on the merits. *Id.* at *2. The court then dismissed Case #1 on the merits, based on res judicata (it concluded that Case #1 raised essentially the same claims as the administrative appeal.) *Id.* at *2–3. The plaintiff did not appeal that decision. Id. She then filed Case #2, raising similar claims as in Case #1. *Id.* The trial court also dismissed Case #2 based on res judicata (because she raised these issues in Case #1). *Id.* The plaintiff then appealed the dismissal of Case #2. *Id.*

The court of appeals concluded that Case #1 was sufficiently different from the initial administrative appeal and, therefore, that Case #1 was improperly dismissed based on res judicata. *Id.* at *7. But the plaintiff never appealed the decision in Case #1, making that erroneous dismissal—which was on the merits—final. Accordingly, the court of appeals held, "pursuant to the doctrine of res judicata, the final judgment in Case [#1] bars the assertion of [plaintiff's] claims in the instant case, Case [#2]." *Id.* at *8.

Here, district court mistakenly viewed Boggs's and Rachid's earlier dismissal for lack of standing—which the district court recognized was not on the merits—as analogous to the dismissal of Case #1 in *Mason*, which was on the merits. (R. 26: Op. at 10.) The district court misread *Mason* to say that any dismissal becomes a dismissal on the merits once the party fails to appeal. But Mason never said any such thing. As noted, the dismissed suit there (Case #1) was dismissed on the merits (coincidentally, by res judicata). In other words, had Case #1 in *Mason* been dismissed based on lack of standing (as Boggs and Rachid were in their first suit), the plaintiff could have chosen not to appeal (as did Boggs and Rachid), and the court would have allowed Case #2 to proceed, consistent with the rule that dismissals for lack of standing are not dismissals on the merits—regardless of any appeal. *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370

(Fed. Cir. 2003) (reversing application of res judicata where first suit was dismissed for lack of standing and not appealed).

Unlike Boggs and Rachid, the corporate Plaintiff Fouad, Inc., was dismissed from the 2002 suit on the merits. The City did not challenge Fouad, Inc.'s standing in that suit, instead arguing that Fouad, Inc., failed to state a meritorious claim. (R. 18-2: City's 2002 Motion.) When Fouad, Inc., failed to appeal its dismissal on the merits, it—like the plaintiff who failed to appeal Case #1 in Mason—enabled the dismissal to remain a final decision on the merits, vulnerable to later assertions of res judicata. Thus, as Plaintiffs' conceded in the district court, the City has met its burden to establish this element of res judicata only as to Fouad, Inc. The City has failed to meet that burden with respect to Boggs and Rachid, however. Accordingly, for these reasons alone, res judicata does not apply to them.

Ultimately, however, this point is inconsequential. As discussed below, the City cannot establish either of the remaining two requirements for res judicata as to any Plaintiffs, including Fouad, Inc.

### 3. The Current Complaint Raises New Facts That Do Not Arise Out of The Same "Transaction Or Occurrence."

In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), the Supreme Court unanimously reversed the application of res judicata where the lower court applied the same reasoning as the district court applied here. There, the plaintiffs brought an antitrust suit that was ultimately dismissed with prejudice. *Id.* at 324. Seven years later, the plaintiffs brought a second antitrust suit against many of the same defendants, alleging the same course of wrongful conduct, which had worsened in the interim. *Id.* at 328. The lower courts applied res judicata to bar the second suit. *Id.*

The Supreme Court reversed, explaining that even though "both suits involved essentially the same course of wrongful conduct," res judicata did not apply. *Id.* at 327 (internal quotation marks omitted). The Court noted that "such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." *Id.* at 327–28. The Court held that claims in the second suit based on events that had not yet occurred at the time of the first suit were not barred: "While the [earlier] judgment

precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* The Court further held that the plaintiffs' claims in the second suit survived res judicata to the extent that those claims alleged worsening of the earlier wrongful conduct: "In the interim, moreover, there was a substantial change in the scope of the defendants' alleged monopoly . . . with the result that the defendants' control over the market . . . had increased to nearly 100%." *Id.* (emphasis added). "Under these circumstances," the Court explained, "whether the defendants' conduct be regarded as a series of individual torts or as one continuing tort, the [earlier] judgment does not constitute a bar to the instant suit." *Id.*

*Lawlor* retains its vitality to this day. *See, e.g.*, *Darney v. Dragon Prods. Co., LLC*, 592 F. Supp. 2d 180 (D. Me. 2009) (applying *Lawlor* to deny application of res judicata where second complaint included new factual allegations, even though there was "facial similarity" with the first complaint). This Court has explained that Ohio courts follow the same principles. *See Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir. 1985) (applying Ohio res judicata principles and explaining that "a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter"); *see also, e.g.*, *Portage Cty. Bd. of Commrs. v. Akron*, 808 N.E.2d 444 (Ohio Ct. App. 2004) (holding that res judicata did not apply to suit based on defendant's use of river water because defendant's use had changed to such a degree that it could no longer be considered the same transaction or occurrence). Here, the district court's application of res judicata to the three new occurrences Plaintiffs raised in their Current Complaint is as flawed as the lower courts' decisions that were overturned in *Lawlor*.

First, the runway expansions are new. Even the City concedes that the expansions occurred after the 2002 Complaint was dismissed. (R. 3: City's Answer ¶¶ 2, 4 (acknowledging that "6L/24R is a new runway" and that "work on that runway was completed in 2004"); R. 23: Stipulated Chronology at 1 (acknowledging that runway 6L/24R opened in August 2004 at a final length of 9,000 feet and that runway 6R/24L opened in December 2008 at a final length of 9,956 feet).) Plaintiffs' Current Complaint is straightforward on this point: The expansions have caused worsening conditions—a substantial change in the scope of continuing harm related to the noise, property damage,

and dangers to the health of Boggs and her family. (*See also* R. 18: Plaintiffs' Opp. at 5 ("The reason for this lawsuit is that the [airport's] old runways, 5L/23R and 5R/23L, were expanded and re-designated "precision instrument runways" by the FAA, in a project that was completed in August 2004, ten months after [the previous] lawsuit was dismissed.").) Under *Lawlor* and related caselaw, res judicata does not apply to the runway expansions.

Yet the district court, citing no authority, relied on a novel explanation to conclude that the newly built runways were not new "transactions or occurrences"—it explained that, in 2002, the runways were "expected" to occur years later, and res judicata therefore applied. (R. 26: Op. at 13.) But res judicata does not apply to claims that were not ripe at the time the first suit was filed. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529–30 (6th Cir. 2006); *see also Brown v. Potter*, 248 F. App'x 712 (6th Cir. 2007) (reversing district court's imposition of res judicata where "at least some of the claims brought in Brown's second suit were not ripe for judicial review at the time his first action was filed"). The 2002 claims regarding yet-to-be-built runways were unripe and not legally cognizable at that time, especially because necessary facts (such as decibel levels and water contamination that occurred at the property once the runways were expanded) were, of course, unknown in 2002. *See Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003) (noting that even an imminent injury may be unripe "if the issues are not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe"). Res judicata cannot bar claims about runways that did not exist in 2002. *See Lawlor*, 349 U.S. at 328 (holding that res judicata "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case").

Second, the district court failed to mention Plaintiffs' claims related to newly alleged facts of water pollution due to the expanded operations. Reversal is required for this claim as well. *See Quality Ready Mix, Inc. v. Mamone*, 520 N.E.2d 193, 197 (Ohio 1988) (for res judicata to apply, the prior proceeding "must involve the same issues").

Third, Plaintiffs alleged new facts amounting to an independent taking based on the revelation—years after the first suit was dismissed—that the City had designated their property for purchase on its Airport Layout Plan, as the property was in dangerous runway

zones. This claim is independent from any claims related to damages caused by low-flying planes, toxins, or pollution. As the Complaint explained, by including Plaintiffs' property on the Airport Layout Plan, the City certified that it will acquire the property or otherwise resolve claims of ownership. *Cf. Preschool Dev., Ltd. v. City of Springboro*, No. 04-00348, 2005 U.S. Dist. LEXIS 35535, at *10 (S.D. Ohio May 4, 2005) (explaining that the "Airport Authority had listed plaintiff's land in its master plan . . . as property it desired to acquire" and "initiated appropriation proceedings in Ohio state court to acquire the land . . . ."). This means the property cannot be sold to another buyer, making its value zero. The City, moreover, refuses to purchase Plaintiffs' property. This taking was never raised in the 2002 Complaint. This new claim, based on new facts and a different "taking," cannot be barred. *See Hines v. Kline Eng.*, 689 N.E.2d 104 (Ohio Ct. App. 1996) (reversing trial court's application of res judicata where plaintiffs' first suit alleged that defendant allowed foundation of a structure to be built below flood level, and plaintiffs' second suit raised a new claim involving the zoning ordinance allowing the construction on the property); *see also Viciendo v. New Horizons Computer Learning Ctr. of Columbus*, 246 F. Supp. 2d 886, 907 (S.D. Ohio 2003) (concluding that res judicata did not apply because issues in first suit centered on plaintiff's conduct after his employment, while issues in the second action centered on his conduct during his employment).

On this third point, the district court suggested that Plaintiffs failed to provide applicable FAA regulations showing that the City is required to purchase the property. (R. 26: Op. at 13.) This is debatable but also immaterial because Plaintiffs have adequately alleged (and the City has conceded) that the Airport Layout Plan denotes properties that the City intends to acquire, and Plaintiffs have explicitly alleged that their property is on that Airport Layout Plan. (Compl. ¶¶ 25, 26.) Because they cannot sell the property to another buyer, this effects a taking. In evaluating the City's motion to dismiss, this Court is to address (and the district court should have addressed) a very narrow question: Have Plaintiffs sufficiently pleaded this claim? A brief look at the Complaint shows that they have.

* * *

Each of these three occurrences since the filing of the 2002 Complaint is new. For this reason, the City fails to meet the third requirement, and res judicata cannot apply.

Additionally, as discussed below, the City cannot meet its burden to show that the claims could have been raised in the earlier suit.

### 4. The New Complaint Raises Claims That Could Not Have Been Raised in the Prior Litigation.

First, the claims regarding worsening damages due to the runway expansion could not have been raised in the 2002 Complaint. As noted, even the City stipulated that these expansions were completed after the 2002 Complaint was filed. Second, the claims about water contamination could not have been raised in the 2002 Complaint because they are also based the expanded operations occurring after 2002.

The district court again concluded, however, that both of these claims could have been raised because they were "expected" in 2002. (R. 26: Op. at 13.) And again, the district court cited no authority for this novel proposition. As noted above, any claims about "expected" injuries were simply not ripe in 2002. Accordingly, res judicata cannot apply. *Rawe*, 462 F.3d at 521 (res judicata cannot bar claims that were unripe in earlier suit).

The third new claim—the City's effective taking of Plaintiffs' property based on the Airport Layout Plan and the City's related duties to acquire the property—also could not have been raised in the first suit. Plaintiffs did not learn about these facts until years after the first suit was dismissed. Plaintiffs could not have been expected to know, when filing a suit alleging noise and related damages, that the City had listed their property on its own Airport Layout Plan. *See Jackson v. Lou Cohen, Inc.*, 618 N.E.2d 193, 196 (Ohio Ct. App. 1992) (res judicata does not apply to buyer's claim regarding tampered odometer because she did not suspect it had been tampered with at the time of the first suit and therefore could not have been expected to include that claim). Indeed, it was the City's duty to notify Plaintiffs that their property was on the Airport Layout Plan, but it never did so. (R. 1-1: Compl. ¶ 30.)

Accordingly, the City has also failed to establish this fourth requirement as to each Plaintiff.

## CONCLUSION

Susan Boggs and her family sought compensation in 2002 for damage caused by airport operations close to their home, but the suit was dismissed. Since that time, worsening damage from newly expanded runways, new water pollution, and the revelation that the City has designated their property for mandatory acquisition, have made their home unlivable and destroyed its monetary value. Based on these new facts, they filed a new complaint. No legal principle can prevent them from the opportunity to substantiate their well-pleaded allegations in the district court. This Court should reverse.

Respectfully submitted,

/s/ David E. Mills

David E. Mills (OH 0075400)
THE MILLS LAW OFFICE LLC
1300 West Ninth Street, Suite 636
Cleveland, OH 44113
Telephone: (216) 929-4747
Facsimile: (202) 379-1767
E-mail: dm@MillsFederalAppeals.com
Counsel for Plaintiffs-Appellants